# Langweber McQuat, LLP.

ATTORNEYS AT LAW
535 Fifth Ave., 25th FLOOR
NEW YORK, NEW YORK 10017

Telephone: (646) 771-6772          Email: info@langwebermcquat.com
Fax: (212) 736-3910                              www.langwebermcquat.com

---

January 12, 2016

<u>SENT VIA ECF</u>   **SUBMITTED UNDER SEAL**

Honorable Deborah A. Batts
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

    Re: <u>United States v. Albert Golant</u>; 13-CR-170 DAB

Your Honor:

    This letter is submitted on behalf of the Defendant Albert Golant in the above captioned matter. Sentencing is currently set for Wednesday, January 20, 2016. I have reviewed certain documents provided to the Court including the Pre-Sentence Report (PSR), the Order of Restitution submitted by the Government and other information provided to the Court for your consideration in sentencing.

    My intention here is not to simply repeat the Case Summary and the background Information of the Defendant but simply to amplify some of the information provided to the Court. As such, I would request that this document be taken under Seal so as to allow the free discussion of relevant factors as submitted to the Court in anticipation of a Motion under Section 5k1.1(a)et.seq of the United States Sentencing Guidelines (the Guidelines).

    Upon review, the Probation Office has laid out the history of this case for the Court and does not bear repeating here. In addition, there is a rendering of the plea agreements in this case and the pleas before Judge Keenan which are accurate and complete. In addition, and

as evidenced by the Plea Agreements in this matter, there is an agreed upon sentencing range under the Guidelines. My comments will be directed to a few areas to aid the Court in seeing a complete picture of Mr. Golant.

**COOPERATION**: The Court is in receipt of the Government letter which fairly portrays Mr. Golant's cooperation. I am sure this Court is aware of the work Mr. Golant and the effort Mr. Golant put forward for the Government in this case. This Court heard the testimony from Mr. Golant and although I was not present I am led to believe that his testimony was complete and accurate. The trial, as noted, was the second time Mr. Golant testified on behalf of the Government initially having testified at a Detention Hearing for the same trial defendant in the case Mr. Golant appeared.

Even though the defendant was released Mr. Golant continued to cooperate with the Government. I would note for the Court from my experience in general and with Mr. Golant specifically, not once did Mr. Golant question his cooperation or hesitate to fulfill the promises made to the Government in the Cooperation Agreement. As the Government has pointed out in the 5k1 letter there were no specific threats made to Mr. Golant but none the less the very nature of the cooperation and the primary defendant in the matter created a risk that Mr. Golant accepted and never shirked his obligations.

Mr. Golant never made excuses to myself or the Government during his proffers that led ultimately to his Cooperation Agreement regarding safety although he had been recently married and had a son with his new wife. It should be noted that Mr. Golant attended all meetings from his homes in the mid-west to New York City at his own expense, including two round trips to complete his testimony of two days interrupted by a weekend. This risk is evident by the Government's characterization of the defendants as "…two significant Russian organized crime defendants…" I would suggest to the Court that Mr. Golant accepted his obligations including testifying in a situation that many may find a matter to be a disagreeable and uninviting task which the Government described as truthful, complete and reliable as evidenced by the verdict. To sum up here, again using the Government's own evaluation, with which I agree whole heartedly, Mr. Golant proved to be a "critical cooperating witness".

2

**CRIMINAL HISTORY:** There are two matters mentioned in the PSR that may be clarified for the Court. The PSR is accurate as to what is in the report and I hope through my involvement in these matters to fill in some small blanks, so to speak.

**ILLINOIS FRAUD CASE:** This Illinois state case was predicated on some of the same charges as occurred or were part basis for the Federal Prosecution. The victim in that case was Michael Orick who is also acknowledged in the Golant matter as a victim before this Court. The PSR notes correctly that the victim Orick received approximately thirty-thousand (30,000) dollars in restitution from Mr. Golant. The PSR also states that that these payments seemed to cease at some point. The reason the restitution payments to Mr. Orick ceased was due to the Assistant State's Attorney in Illinois directing Mr. Orick to longer accept payments from Mr. Golant. This was relayed to me by the State's Attorney in telephone communications. I relayed this information to Mr. Golant and the payments ceased.

It is also accurate the Mr. Golant was taken into custody on two occasions when the warrant related to the Illinois case somehow was reported on certain data bases. I had been assured that the warrant would not be entered into the system and the case would be dismissed based upon the Federal Prosecution as long as Mr. Orick was included as a victim in this case, which he has been included. The Illinois case was subsequently dismissed after the second enforcement of the warrant thanks to the aid of a Supervising State's Attorney.

**CONNECTICUT FRAUD CASE:** This case was generated by a complaint from an auto dealer in Stamford, CT. I represented Mr. Golant on that matter. The charge was ultimately dismissed based on a civil payment made to Toyota of Stamford. In this case I dealt with the civil attorney's for Toyota and not the State's Attorney until the victim indicated Mr. Golant paid the agreed upon settlement amount of twenty five-thousand (25,000) dollars. There were also evidentiary factors which contributed to the settlement most noteworthy being the "second set of books" kept by Toyota.

**RESTITUTION**: The PSR and the Order submitted by the Government are reflective of some of the payments and settlements made by Mr. Golant. It has come to my attention that there was testimony by Mr. Golant which is reflective of a greater number than reflected in the PSR or the proposed Order. Mr. Golant and I felt that the Court should know where these amounts came from and for various reasons and perhaps miscommunications, these most recent were not shred prior to this writing.

As the PSR notes on Page 14 Footnotes 1 and 2, Mr. Golant has settled restitution amounts on the following:

Pavel Portnoy  sixty-five thousand (65,000) dollars

Leonid Shteynbuk seventy-seven thousand (77,000) dollars.

In addition the following victims have been settled:

Brian Erdlen twenty- one thousand (21,000) dollars (see attached letter)

Infinite Auto Leasing (Alex Tsirulnikov) three hundred-forty thousand (340,000) dollars (see attached letter)

Howard Bassuk (dba Worldwide Automotive Alliances) two hundred fifty-one thousand (251,000) dollars (see attached agreement and e-mail)

It should also be noted that victim Andrew Gellert received a refund of two-hundred thousand dollars from a New Jersey casino. Mr. Golant had Mr. Gellert wire said monies to Mr. Golant's account at the casino to cover a debt owed to the casino. Mr. Gellert was led to believe it was being sent to an account of Mr. Golant's at a bank to be used to purchase vehicles. Your writer has been contacted by Marshall Adams, Esq. who indicated that Mr. Gellert received a refund from the casino. This information came to this writer in conversations with Mr. Adams regarding Mr. Golant possibly being deposed or testifying in a case Mr. Gellert had in Florida State Court against the aforementioned Mr. Bassuk.

In sum, the defendant has settled or adjusted debts to the amount of nine hundred and fifty-four thousand (954,000) dollars. Again it was my belief that this would be

4

addressed at a later time but is stated here in order be consistent with Mr. Golant's prior statements.

**PERSONAL DATA**: The PSR is an accurate portrayal of Mr. Golant's life at this point. Since the incidents herein, Mr. Golant is now happily married and he and his wife Jacqueline are parents to healthy baby boy Jaeden. Most of Mr. Golant's time is spent in his business and working tiredly to support his family. Mr. Golant is also still very aware and dedicated to settling the remaining restitution that is currently outstanding.

I have represented Mr. Golant in all aspects form this case and the business ventures and find him to be very intelligent and honest. I cannot imagine the gambling addiction Mr. Golant had to face in his past which brought him to this point in his life. Mr. Golant and I have discussed how low his life was when this case occurred and that it was almost a relief that he was arrested. In these last three years I have seen Mr. Golant grow and continue in a business at which he is very adept.

I know that the amounts of money involved may seem staggering, especially with nothing to show ultimately for the gambling. I know given the chance and continuing therapy/counseling that he hopes to gain a second chance in great part so he can make amends to his victims and his family. As an example, there have been some victims that reached out to Mr. Golant in order to settle restitution amounts in order to continue doing business with Mr. Golant and the company he works for at this time. With all the misfortune reflected in this case, Mr. Golant has always been able to work and keep his business viable despite problems of the past. Since the incidents which have placed Mr. Golant before this Court, Mr. Golant has made strides in his professional life so as not to put himself in the position of taking business money for his own gain and use. This has allowed him to stream line his business practices and to keep them true to ethical standards.

**RECCOMENDATION AND REQUSTS**: In sum, clearly there are most matters I strongly agree with in the PSR and the Government's Letter related to 5k1. I would join Probations recommendation as to Time Served and Three Years Post Release supervision. I would make to suggestions to

the Court to consider alternatives to two components to the recommendation.

First: I would ask the Court to consider not imposing a fine in this case. The PSR recommends a fine in the amount of thirty-five thousand (35,000) dollars. I would ask the Court not to impose this fine, and if no fine is imposed that is more money overall that may be paid to the victims in this case.

Second: I would ask the Court to reconsider the recommendation of six months home confinement. Mr. Golant has the necessity to work and thus travel outside the home. Even allowed to do so, I suggest that given Mr. Golant's now sedentary lifestyle, that home confinement is not necessary in the instant case. It should be noted that Mr. Golant was generally compliant with his release conditions for nearly three years. During that time he has travelled with the Court's permission (J. Keenan) on approximately 15-20 occasions for business and has never once violated release for travel nor has he ever been out of contact with those charged with supervising his release. I believe Mr. Golant has demonstrated that he does not require the constraints of home confinement and ask the Court to consider leaving that condition out of the recommendation.

## **CONCLUSION**

For all of the reasons stated herein, as well as those stated in the PSR and the Government's submitted letter, I respectfully request on Mr. Golant's behalf, that this Court sentence Mr. Golant to time served and three years post release supervision in the manner I have suggested above.

Respectfully submitted,

*[signature]*
Edward J. McQuat, Esq.
Langweber-McQuat, LLP
535 Fifth Ave., 25th Floor
New York, NY 10017
T -(646) 771-6772
C -(972) 965-3204

# ATTACHMENTS

1) <u>Letter RE: Brian Endlen</u>
2) <u>Letter RE: Infinite Auto</u>
3) <u>Restitution Agreement and E-Mail on Howard Bassuk ( dba Worldwide Automotive Alliances)</u>

# Langweber McQuat, LLP.

ATTORNEYS AT LAW
261 MADISON AVENUE, 12th FLOOR
NEW YORK, NEW YORK 10016

Telephone: (646) 771-6772
Fax: (212) 736-3910

Email: info@langwebermcquat.com
www.langwebermcquat.com

October 1, 2014

Mr. Brian Erdlen
2 Little Brook Rd.
Darien, CT 06820

RE: Restitution on Case 13-cr-170 (SDNY)

Dear Mr. Erdlen,

  Our records and conversations show that you are in receipt of twenty-one thousand (21,000) dollars in certified funds. These monies were owed as restitution in the above mentioned case number pending in US District Court in the Southern District of New York. My client, Albert Golant has paid these funds as restitution for your claim in this case. Please sign the acknowledgement below in order to finalize this matter so that I may document this restitution for the Government and the Court. Feel free to ask any questions of me at 972-965-3204, or have an attorney review prior to signing. Thank you in advance for your time and patience in this matter.

Sincerely,

Edward J. McQuat, Esq.
Langweber-McQuat

I, Brian Erdlen, do hereby acknowledge that I have received certified funds in the amount of twenty-one thousand (21,000) dollars from Albert Golant and such payment constitutes full restitution to me as a victim in case number 13-cr-170 (SDNY).

Brian Erdlen
Dated: October __/__, 2014.

Via e-mail (both sent and received)



3371 Shore Parkway. Brooklyn, NY 11235
(718) 769-2886

March 5, 2014

To whom it may concern,

Please be advised that we've reached a settlement agreement between Infinite Auto Leasing Company LLC located at 3371 Shore Parkway, Brooklyn NY 11235 and Albert Golant with regards to his $340,000.00 debt obligation. Upon mutual decision, we've agreed to a $60,000.00 payment to satisfy the debt obligation in full.

Please do not hesitate to contact me should you have any questions.

Best Regards,

Alex Tsirulnikov
President/CEO

## RESTITUTION AGREEMENT

This Restitution Agreement is entered into between Albert (Alex) Golant and Howard Bassuk:

1. Mr. Golant will pay restitution to Mr. Bassuk as follows: $25,000 on October 15, 2014, $25,000 on November 1, 2014, and $5,000 a month beginning December 1, 2014 and will continue for twelve consecutive months, for a total payment of $110,000.

2. Within 30 days of execution of this Agreement, Mr. Golant will return to Mr. Bassuk the Audemars Piguet watch purchased by Mr. Bassuk at the request of Mr. Golant or reimburse Mr. Bassuk the full purchase price of $14,000.

3. Full payment of the above restitution will satisfy claims Mr. Golant agrees Mr. Bassuk could make against him for failure to deliver vehicles purchased.

The parties have executed this Agreement on the date(s) set forth below:

ALBERT (ALEX) GOLANT

Dated: 10/14/14

HOWARD BASSUK

Dated: 10/14/14

# Check

Wednesday, January 13, 2016    11:27 PM

From: "Howard"
To: "edward mcquat"
Date: Wed 9/02/15 4:33 PM
Subject: Check

Ok and thank you sir. You've been a gentleman

Sent from my iPhone

On Sep 2, 2015, at 7:10 PM, edward mcquat emcquat@hotmail.com> wrote:

We sent a check today to the temp address you provided, be advised the check is for 15 k and satisfies the remainder of the settlement agreement, thanks, Ed

Edward J. McQuat, Esq.
Attorney and Counselor at Law
New York, NY and Spokane, WA
emcquat@langwebermcquat.com
emcquat@hotmail.com
Web Site: http://www.langwebermcquat.com/
SKYPE: Edward McQuat
972-965-3204
509-496-8220

Click here to see the original message on Outlook.com